## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RICHARD S. CARTER** ) | |
| **JONITA B. CARTER** ) | |
| 98010 Falls Rd ) | |
| Potomac, MD 20854 ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action No. 1:18-cv-643** |
| **v.** ) | |
| ) | |
| **URBAN SERVICE SYSTEMS CORP.** ) | |
| 212 Van Buren St NW ) | |
| Washington, D.C. 20012 ) | |
| ) | |
| **WILLIAM W. KEATING, III** ) | |
| 2101 Yorktown Road ) | |
| Washington, D.C. 20012 ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiffs Richard S. Carter ("Mr. Carter") and Jonita B. Carter ("Mrs. Carter"), (collectively, the "Carters"), by and through their undersigned counsel, and for their Complaint against the above-named Defendants Urban Service Systems Corp. ("USSC" or "the Company") and William W. Keating, III ("Mr. Keating") (collectively, "Defendants"), allege the following:

### Nature of the Action

1. For decades, the Carters owned and operated USSC, a company providing waste collection, disposal, and processing services in the District of Columbia. Mr. Carter worked closely with Mr. Keating, who served as Mr. Carter's right-hand man and, ultimately, as president of USSC.

2.      When the Carters approached retirement, they decided to sell the company to Mr. Keating, who was intimately familiar with the business and who they believed would carry on the Company's legacy.

3.      Because Mr. Keating did not have the funds to purchase the Company, the parties, both represented by counsel, executed a series of agreements under which the Carters agreed to transfer their shares of the Company to Mr. Keating and the Company in exchange for payments totaling $1,238,000.00 to be paid over the course of a nearly five-year period.  The parties executed three promissory notes memorializing the transaction, each of which was secured by the Carters' interest in the corresponding shares of the Company's stock.

4.      To ensure that the Carters would be paid the outstanding amounts owed to him, the parties executed an escrow agreement and established an escrow account, so that one of the Company's primary income streams—an ongoing contract for services with the District of Columbia Water and Sewer Authority ("D.C. Water")—would be escrowed monthly and Mr. Carter's monthly payment would be distributed from that escrow account.

5.      In the year following these agreements, Mr. Carter also made a series of loans to the Company and at Mr. Keating's request.

6.      The relationship continued amicably for more than a year, with the D.C. Water payments being escrowed and the agreed-upon monthly payment being distributed to the Carters.

7.      In December of 2017, however, without warning, justification, or excuse, and in violation of the parties' agreements, Mr. Keating instructed and prevented D.C. Water from depositing the monthly payment in the parties' escrow account as agreed, and has wrongly and unjustifiably withheld all funds owed to the Carters.

8.      These actions constitute events of default under the parties' notes.

9.      Mr. Keating and the Company have failed to cure these events of default.

10.     The Carters have exercised their contractual rights and accelerated the payments due under the notes.

11.     The total amount due under the notes alone is $914,502.54, plus interest, costs, and attorneys' fees as provided in the agreements.

## Parties

12.     Plaintiffs Richard S. Carter and Jonita B. Carter are residents of the state of Maryland.

13.     Defendant USSC is a corporation organized and existing under the laws of the District of Columbia with its principal place of business in the District of Columbia.

14.     Defendant William W. Keating, III is the president and current owner of USSC. Mr. Keating is a resident of the District of Columbia.

## Jurisdiction and Venue

15.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the Carters and the Defendants and the amount in controversy exceeds $75,000, exclusive of interests and costs.

16.     The Court has personal jurisdiction over USSC pursuant to D.C. Code § 13-422 because USSC is organized under the laws of and maintains its principal place of business in the District of Columbia.

17.     The Court has personal jurisdiction over Mr. Keating pursuant to D.C. Code § 13-422 because Mr. Keating is domiciled in the District of Columbia.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because each Defendant resides in or maintains its principal place of business in the District of Columbia.

## The Carters Sell the Company to Mr. Keating

19.    USSC is a waste collection, disposal, and processing company that has been providing services in the District of Columbia for approximately 45 years.  The Carters were the owners of USSC for a majority of those years.  Under the Carters' ownership, Mr. Keating served as president of USSC for more than eight years.

20.    In 2016, the Carters decided to retire and sold the company to Mr. Keating, who was intimately familiar with the business in his role as President, including its contracts with D.C. Water and the revenue generated by those contracts.

21.    The Carters and Mr. Keating were each represented by independent counsel during the negotiations, and executed a series of agreements memorializing the sale.

### *The Stock Purchase and Redemption Agreement*

22.    On April 19, 2016, the Carters, Mr. Keating, and USSC executed a Stock Purchase and Redemption Agreement providing that the Carters would "sell, assign, transfer, convey and deliver" shares of their stock in USSC in the following manner:

   a.    USSC would redeem, acquire and accept 59,951.75 shares of Mr. Carter's stock;

   b.    USSC would redeem, acquire and accept 7,967 shares of Mrs. Carter's stock; and

   c.    Mr. Keating would purchase and accept 3,983 shares of Mrs. Carter's stock.

(Stock Purchase and Redemption Agreement at 1, a true and correct copy of which is attached hereto as **Exhibit 1**).

23.    The total purchase price of the shares was $1,238,000.00.

4

*The Promissory Notes*

24.      On April 19, 2016, in accordance with the Stock Purchase and Redemption Agreement, USSC executed a Promissory Note ("Promissory Note 1," a true and correct copy of which is attached hereto as **Exhibit 2**) in favor of Mr. Carter in the amount of $1,032,246.00.

25.      USSC also issued a Promissory Note ("Promissory Note 2," a true and correct copy of which is attached hereto as **Exhibit 3**) in favor of Mrs. Carter in the amount of $137,175.00.

26.      Mr. Keating personally executed a Promissory Note ("Promissory Note 3," a true and correct copy of which is attached hereto as **Exhibit 4**) in favor of Mrs. Carter in the amount of $68,579.00.

27.      Each Promissory Note contained an attached amortization schedule enumerating the 58 monthly payments, including principal and interest, due to pay off each Promissory Note in full.  (Exs. 2-4 at 5-7).

28.      On July 15, 2016, the parties modified the amortization schedules of the Promissory Notes.  (Allonges to Promissory Notes, true and correct copies attached hereto as **Exhibits 5**, **6**, and **7**).  The monthly payments under the modified amortization schedules were as follows:

| | |
|---|---|
| Promissory Note 1 | $19,070.30 |
| Promissory Note 2 | $2,534.25 |
| Promissory Note 3 | $1,266.97 |
| Total monthly payment | $22,871.52 |

29.      Defendants made 15 payments on the Promissory Notes between September 2016 and December 2017, totaling $343,072.80 in principal and interest.  $762,513.40 in principal remains on Promissory Note 1 (Ex. 5 at 3), $101,330.28 in principal remains on Promissory Note

2 (Ex. 6 at 3), and $50,658.86 in principal remains on Promissory Note 3 (Ex. 7 at 3), for a total of $914,502.54 in principal, plus interest at the rate of 1.44%.

*The Security Agreements*

30.     The Promissory Notes were each secured by separate security agreements executed by the parties on April 19, 2016.  ("Security Agreement 1, 2, and 3," respectively, true and correct copies of which are attached hereto as **Exhibits 8**, **9**, and **10**).

31.     Security Agreement 1 granted Mr. Carter a security interest in 59,951.75 shares of the Company stock.  (Ex. 8 at ¶ 1).  Under Security Agreement 1, the Company agreed to issue Mr. Carter the shares and deliver a corresponding stock certificate in the event that the Company defaulted under Promissory Note 1.  The Company has defaulted and despite demand has failed to issue the shares or deliver the corresponding stock certificate.

32.     Security Agreement 2 granted Mrs. Carter a security interest in 7,967 shares of the Company stock.  (Ex. 9 at ¶ 1).  Under Security Agreement 2, the Company agreed to issue Mrs. Carter the shares and deliver a corresponding stock certificate in the event that the Company defaulted under Promissory Note 2.  The Company has defaulted on this note, as well, yet despite demand the Company has failed to issue the shares or deliver the corresponding stock certificate.

33.     Under Security Agreement 3, between Mr. Keating and Mrs. Carter, Mr. Keating personally assigned, pledged, and granted Mrs. Carter a security interest in and to 3,983 shares of USSC.  (Ex. 10 at ¶ 1).  The Security Agreement permitted Mr. Keating a limited right to exercise the voting rights associated with the shares.  In the event of default under the Note, such rights would cease.  (Ex. 10 at ¶ 3).  Mr. Keating has defaulted under this Note, and despite

demand has failed to provide Mrs. Carter all her rights to those shares, including her voting rights.

### Mr. Keating, the D.C. Water Contract, and the Escrow Agreement

34.     Mr. Keating, in his capacity of president of USSC, directly supervised, and continues to supervise, an ongoing contract that USSC performed for D.C. Water called the Solids Screening Facility Hauling and Roll-Off Trailers Contract (the "D.C. Water Contract").

35.     Under the D.C. Water Contract, USSC provides certain services to D.C. Water and receives approximately $900,000 in compensation for its work, with D.C. Water given the option to renew the Contract for up to four one-year terms.

36.     Mr. Keating not only was and is closely involved with the supervision of the D.C. Water Contract, but also was closely involved with USSC's bidding for the D.C. Water Contract and the revenues generated by that Contract.

37.     On July 15, 2016, Mr. Carter and USSC entered into an Escrow Agreement (a true and correct copy of which is attached hereto as **Exhibit 11**) requiring USSC to deposit approximately $900,000 annually into an escrow account.  (Ex. 11 at ¶ 1.1).

38.     The parties intended the source of this funding to be the proceeds of the D.C. Water Contract.

39.     The Escrow Agreement provided that Escrow Agent Branch Banking and Trust Company ("BB&T") would disburse $22,876.52 each month to Mr. Carter.  (Ex. 11 at 6).

40.     Such disbursement would satisfy the $22,871.52 due to the Carters each month under the Promissory Notes.

41.     The remaining monthly balance of the D.C. Water payment would be disbursed to USSC.  (Ex. 11 at 6).

**The Company and Mr. Keating Materially Breach the Agreements**

42.     Upon information and belief, beginning in late December 2017, without warning or explanation, Mr. Keating unilaterally instructed D.C. Water to cease funding the parties' escrow account, instead diverting all funds to an account that he controlled.  To date, Mr. Keating refuses to instruct D.C. Water to deposit proceeds into the Escrow Account in accordance with the Escrow Agreement.

43.     Defendants have failed to make payments due upon the Promissory Notes from January 2018 to present.

44.     The Promissory Notes provide that a default "shall occur . . . if there is a failure to pay principal or interest (or any part thereof) when due and payable hereunder, and the continued failure to make such payment within fifteen (15) days after notice in writing is given to [Defendants]." (Exs. 2-4 at ¶ 4(a)).

45.     On February 2, 2018, the Carters notified Defendants in writing that payment was past due, and that failure to remit payment on or before February 17, 2018 would constitute a default under the Promissory Notes.  (Notice of Default and Demand for Payment, attached hereto as **Exhibit 12**).

46.     Defendants did not remit payment by February 17, 2018, nor anytime thereafter, and are thus in default under the Promissory Notes.

47.     The Promissory Notes provide that:

> In the event of a default under [the Promissory Notes,] . . . at the option of the Holder[s] thereof, the maturity of [the Promissory Notes] shall be automatically accelerated and the entire balance of the unpaid principal and interest of [the Promissory Notes], together with all fees, costs and expenses . . . shall become and be immediately due and payable.

(Exs. 2-4 at ¶ 4(b)).

48.     On February 23, 2018, the Carters notified Defendants in writing that they are in default under the Promissory Notes and that pursuant to ¶ 4(b), the Carters were exercising their right to accelerate the total amount due under the Promissory Notes, in the amount of $914,502.54.  (Notice of Acceleration and Demand for Payment, a true and correct copy of which is attached hereto as **Exhibit 13**).

49.     In the same Notice, the Carters notified Mr. Keating that because he was in default under Promissory Note 3, his voting rights to the 3,983 shares had ceased pursuant to Security Agreement 3.  (Ex. 13 at 2-3).  Accordingly, the Carters demanded that Mr. Keating immediately complete a stock power transferring, assigning, and conveying the 3,983 shares to Mrs. Carter.  (Ex. 13 at 3).

50.     The Carters also demanded that, in accordance with Security Agreements 1 and 2, USSC issue secured shares to Mr. Carter in the amount of 59,951.75 and Mrs. Carter in the amount of 7,967.  (Ex. 13 at 3).

51.     Defendants have failed to make any payments, complete the stock power, or issue the secured shares in accordance with their obligations under the Promissory Notes and Security Agreements.

**Mr. Keating and the Company Refuse to Pay Other Debts Owed**

*The Asset Purchase Agreement*

52.     In or around April 2017, Mr. Carter and USSC modified the Escrow Agreement with a revised disbursement request and accompanying amortization schedule enumerating monthly payments of $2,358.42 due upon USSC's purchase of commercial vehicles in the total amount of $100,000.  ("Asset Purchase Agreement," a true and correct copy of which is attached hereto as **Exhibit 14**).

53.     The Asset Purchase Agreement directed the Escrow Agent to disburse $25,529.73 each month to Mr. Carter, of which $2,358.42 would satisfy the monthly payments due upon the Asset Purchase Agreement.

54.     USSC made a total of 9 payments under the Asset Purchase Agreement, with $84,361.86 in principal remaining.

55.     USSC has failed to make payments due under the Asset Purchase Agreement from January 2018 to present.

56.     On February 2, 2018, the Carters demanded the two months' past-due payments, which total $4,716.84.  (Ex. 12 at 1).

57.     USSC has failed to date to remit such payment, or any further payments now due upon the Asset Purchase Agreement.

***The Vendor Payments Reimbursement Agreement***

58.     In or around September 2017, Mr. Carter made a series of payments to third-party vendors on behalf of USSC in the total amount of $14,739.30.

59.     USSC agreed to repay Mr. Carter in full by way of 50 installments of $294.79 per month.  ("Vendor Payments Reimbursement Agreement," a true and correct copy of which is attached hereto as **Exhibit 15**).

60.     To date, USSC has made 9 payments due under the Vendor Payments Reimbursement Agreement, with $12,086.19 in principal remaining.

61.     USSC failed to make payments due under the Vendor Payments Reimbursement Agreement from January 2018 to present.

62.     On February 2, 2018, the Carters demanded the two months' past-due payments, which total $499.58.  (Ex. 12 at 1).

63.     USSC has failed to date to remit such payment, or any further payments now due upon the Vendor Payments Reimbursement Agreement.

## COUNT I
### (Breach of Contract — Promissory Note 1 against USSC)

64.      The Carters incorporate by reference paragraphs 1 through 63 as if fully set forth herein.

65.     Defendant USSC executed Promissory Note 1 for the benefit of Mr. Carter, as holder of the Note.   (Ex. 2 at 1).   Promissory Note 1 and the corresponding modified amortization schedule is a valid and enforceable contract under which Mr. Carter has fully performed.

66.     Under the terms of Promissory Note 1, USSC is obligated to make regular payments to Mr. Carter in accordance with the modified amortization schedule.

67.     In the event of default, Promissory Note 1 entitles Mr. Carter to, at his option, accelerate the total amount due upon the Promissory Note, plus interest at a rate of 1.44%, together with all costs and expenses, including attorneys' fees incurred up and until payment is made in full.

68.     USSC materially breached Promissory Note 1 by failing to make payments due in January 2018 and continuing to date.

69.     USSC is in default under Promissory Note 1.

70.     Accordingly, Mr. Carter exercised his option to accelerate the total amount due. (Ex. 13 at 2).

71.     As a direct result of USSC's material breach, Mr. Carter has suffered, and continues to suffer, monetary damages in the amount of $762,513.40 in outstanding principal due

under Promissory Note 1, plus interest at a rate of 1.44%, and costs and expenses, including attorneys' fees.

## COUNT II
### (Breach of Contract — Promissory Note 2 against USSC)

72.     The Carters incorporate by reference paragraphs 1 through 71 as if fully set forth herein.

73.     Defendant USSC executed Promissory Note 2 to the benefit of Mrs. Carter, as holder of the Note.   (Ex. 3 at 1).   Promissory Note 2 and the corresponding modified amortization schedule is a valid and enforceable contract under which Mrs. Carter has fully performed.

74.     Under the terms of Promissory Note 2, USSC is obligated to make regular payments to Mrs. Carter in accordance with the modified amortization schedule.

75.     In the event of default, Promissory Note 2 entitles Mrs. Carter to, at her option, accelerate the total amount due upon the Promissory Note, plus interest at a rate of 1.44%, together with all costs and expenses, including attorneys' fees incurred up and until payment is made in full.

76.     USSC materially breached Promissory Note 2 by failing to make payments due in January 2018 and continuing to date.

77.     USSC is in default under Promissory Note 2.

78.     Accordingly, Mrs. Carter exercised her option to accelerate the total amount due. (Ex. 13 at 2).

79.     As a direct result of USSC's material breach, Mrs. Carter has suffered, and continues to suffer, monetary damages in the amount of $101,330.28 in outstanding principal due

under Promissory Note 2, plus interest at a rate of 1.44%, and costs and expenses, including attorneys' fees.

<u>**COUNT III**</u>
**(Breach of Contract — Promissory Note 3 against Mr. Keating)**

80.     The Carters incorporate by reference paragraphs 1 through 79 as if fully set forth herein.

81.     Mr. Keating executed Promissory Note 3 to the benefit of Mrs. Carter, as holder of the Note.  (Ex. 4 at 1).  Promissory Note 3 and the corresponding modified amortization schedule is a valid and enforceable contract under which Mrs. Carter has fully performed.

82.     Under the terms of Promissory Note 3, Mr. Keating is obligated to make regular payments to Mrs. Carter in accordance with the modified amortization schedule.

83.     In the event of default, Promissory Note 3 entitles Mrs. Carter to, at her option, accelerate the total amount due upon the Promissory Note, plus interest at a rate of 1.44%, together with all costs and expenses, including attorneys' fees incurred up and until payment is made in full.

84.     Mr. Keating materially breached Promissory Note 3 by failing to make payments due in January 2018 and continuing to date.

85.     Mr. Keating is in default under Promissory Note 3.

86.     Accordingly, Mrs. Carter exercised her option to accelerate the total amount due. (Ex. 13 at 2).

87.     As a direct result of Mr. Keating's material breach, Mrs. Carter has suffered, and continues to suffer, monetary damages in the amount of $50,658.86 in outstanding principal due under Promissory Note 3, plus interest at a rate of 1.44%, and costs and expenses, including attorneys' fees.

## COUNT IV
### (Breach of Contract — Security Agreement 1 against USSC)

88.     The Carters incorporate by reference paragraphs 1 through 87 as if fully set forth herein.

89.     USSC executed Security Agreement 1 to the benefit of Mr. Carter as seller of the 59,951.75 shares of stock in the Company.  (Ex. 8 at 1).  Security Agreement 1 is a valid and enforceable contract under which Mr. Carter has fully performed.

90.     Under Security Agreement 1, USSC agreed to issue Mr. Carter the 59,951.75 shares and deliver a corresponding stock certificate in the event that the Company defaulted under Promissory Note 1.

91.     USSC is in default under Promissory Note 1.

92.     USSC materially breached Security Agreement 1 by failing to issue the shares to Mr. Carter despite Mr. Carter's demand.

## COUNT V
### (Breach of Contract — Security Agreement 2 against USSC)

93.     The Carters incorporate by reference paragraphs 1 through 92 as if fully set forth herein.

94.     USSC executed Security Agreement 2 to the benefit of Mrs. Carter as seller of the 7,967 shares of stock in the Company.  (Ex. 9 at 1).  Security Agreement 2 is a valid and enforceable contract under which Mrs. Carter has fully performed.

95.     Under Security Agreement 2, USSC agreed to issue Mrs. Carter the 7,967 shares and deliver a corresponding stock certificate in the event that the Company defaulted under Promissory Note 2.

96.     USSC is in default under Promissory Note 2.

97.     USSC materially breached Security Agreement 2 by failing to issue the shares to Mrs. Carter despite Mrs. Carter's demand.

## COUNT VI
### (Breach of Contract — Security Agreement 3 against Keating)

98.     The Carters incorporate by reference paragraphs 1 through 97 as if fully set forth herein.

99.     USSC executed Security Agreement 3 to the benefit of Mrs. Carter as pledgee of the 3,983 shares of stock in the Company.  (Ex. 10 at 1).  Security Agreement 3 is a valid and enforceable contract under which Mrs. Carter has fully performed.

100.    Pursuant to Security Agreement 3, Mr. Keating's rights with respect to the pledged shares cease in the event of default under Promissory Note 3.  Such rights would revert to Mrs. Carter as pledgee of the shares.

101.    Mr. Keating is in default under Promissory Note 3.

102.    Mrs. Carter demanded that Mr. Keating complete a stock power transferring, assigning, and conveying the rights to the shares to Mrs. Carter.  (Ex. 13 at 3).

103.    Mr. Keating materially breached Security Agreement 3 by failing to provide Mrs. Carter all her rights to the shares, including her voting rights, upon Mr. Keating's default.

## COUNT VII
### (Breach of Contract — The Asset Purchase Agreement against USSC)

104.    The Carters incorporate by reference paragraphs 1 through 103 as if fully set forth herein.

105.    The Asset Purchase Agreement is a valid and enforceable contract under which Mr. Carter has fully performed.

106.    Defendant USSC materially breached the Asset Purchase Agreement by failing to make payments it was obligated to pay under the Agreement.

107.    As a direct result of USSC's material breach, Mr. Carter has suffered, and continues to suffer, monetary damages in the principal amount of $84,361.86 due under the Asset Purchase Agreement.

## COUNT VIII
### (Breach of Contract — Vendor Payments Reimbursement Agreement against USSC)

108.    The Carters incorporate by reference paragraphs 1 through 107 as if fully set forth herein.

109.    The Vendor Payments Reimbursement Agreement is a valid and enforceable contract under which Mr. Carter has fully performed.

110.    Defendant USSC materially breached the Vendor Payments Reimbursement Agreement by failing to make payments it was obligated to pay under the Agreement.

111.    As a direct result of USSC's material breach, Mr. Carter has suffered, and continues to suffer, monetary damages in the principal amount of $12,086.19 due upon the Vendor Payments Reimbursement Agreement.

## COUNT IX
### (Speedy Declaratory Judgment — Promissory Notes and Security Agreements)

112.    The Carters incorporate by reference paragraphs 1 through 111 as if fully set forth herein.

113.    28 U.S.C. § 2201 provides that in a case of actual controversy within its jurisdiction, upon the filing of an appropriate pleading, any court of the United States may declare the rights and other legal remedies of any interested party seeking such declaration, regardless of whether further relief is sought.

114.     Rule 57 of the Federal Rules of Civil Procedure provides that the Court may order a speedy hearing of a declaratory-judgment action.  The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.

115.     The Carters seek a speedy declaration that USSC and Mr. Keating are in default under the Promissory Notes, and that the Carters are the rightful owners of the shares of USSC in accordance with the Security Agreements securing the Promissory Notes.

## PRAYER FOR RELIEF

WHEREFORE, the Carters pray that this Court enter an order and judgment in favor of the Carters and against Defendants, as follows:

A.     Count I:     Against USSC, compensatory damages in the amount of $762,513.40, plus interest, costs and expenses, including reasonable attorneys' fees incurred in connection with enforcing all rights under Promissory Note 1 and Security Agreement 1;

B.     Count II:     Against USSC, compensatory damages in the amount of $101,330.28, plus interest, costs and expenses, including reasonable attorneys' fees incurred in connection with enforcing all rights under Promissory Note 2 and Security Agreement 2;

C.     Count III:     Against Mr. Keating, compensatory damages in the amount of $50,658.86, plus interest, costs and expenses, including reasonable attorneys' fees incurred in connection with enforcing all rights under Promissory Note 3 and Security Agreement 3;

D.     Count IV:     Issue a mandatory injunction requiring USSC to issue the secured shares to Mr. Carter in the amount of 59,951.75 per Security Agreement 1;

E.     Count V:     Issue a mandatory injunction requiring USSC to issue the secured shares to Mrs. Carter in the amount of 7,967 per Security Agreement 2;

F.      Count VI:      Issue a mandatory injunction requiring Mr. Keating to execute a stock power in favor of Mrs. Carter assigning and conveying the 3,983 shares per Security Agreement 3;

G.      Count VII:      Against USSC, compensatory damages in the amount of $84,361.86, plus interest, costs and expenses;

H.      Count VIII:      Against USSC, compensatory damages in the amount of $12,086.19, plus interest, costs and expenses;

I.      Count IX:      A declaration that USSC and Mr. Keating are in default under the Promissory Notes, and that the Carters are the rightful owners of the shares of USSC in accordance with the Security Agreements;

J.      Award the Carters the reasonable attorneys' fees incurred in the prosecution of this action;

K.      Award the Carters all reasonable costs of this action;

L.      Award the Carters pre- and post-judgment interest at the statutory rate; and

M.      Such further relief as this Court deems just and proper.

Respectfully submitted,

March 20, 2018                              /s/ Benjamin E. Horowitz
                                           David L. Feinberg (D.C. Bar 982635)
                                           Benjamin E. Horowitz (D.C. Bar 1017262)
                                           VENABLE LLP
                                           600 Massachusetts Avenue, N.W.
                                           Washington, D.C.  20001
                                           T: 202.344.4000
                                           F: 202.344.8300
                                           dlfeinberg@venable.com
                                           behorowitz@venable.com

                                           *Counsel for Plaintiffs*

18